## OHIO CASUALTY INS. CO. OF HAMILTON v. DALLAM et al.

### No. 12614.

Circuit Court of Appeals, Eighth Circuit.

Oct. 26, 1943.

Fred C. Huebner, of Des Moines, Iowa (Alex M. Miller and Charles W. Joiner, both of Des Moines, Iowa, on the brief), for appellant.

W. B. Sloan, of Des Moines, Iowa (Willis J. O'Brien and Hughes, O'Brien & Hughes, all of Des Moines, Iowa, on the brief), for appellees H. Dallam & Sons.

Before WOODROUGH, THOMAS, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

In this action brought by the insurance company, an Ohio corporation, for declaratory judgment to the effect that its Standard Workmen's Compensation and Employer's Liability Policy issued to H. Dallam and Sons, a partnership, of Waukee, Iowa, does not cover claim for compensation made by one Lawrence Lentz on account of injuries he sustained in the course of his employment by the insured while the policy was in force, the findings and judgment were against the company and it appeals.

It was alleged in the complaint that "the plaintiff agreed to insure during the term of said policy said defendants' liability under the workmen's compensation laws of the State of Iowa on account of injuries sustained by employees of said defendants 'by reason of the business operations described in said Declarations which, for the purpose of this insurance, shall include all

operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said Declarations or elsewhere in connection with, or in relation to, such work places.' That the business operations described in said declarations and made a part of said contract are: 'Grain Elevator Operation—not floating or terminal elevators—including local managers; Drivers; Chauffeurs and their Helpers.' That copy of said contract is hereto attached, marked Exhibit A, and made a part hereof.

"That in the first part of June, 1942, said defendants purchased from the Shuler Coal Company several one story frame houses located at or near said coal company's mine about two miles east and three-quarters of a mile north of Waukee, Iowa. That said houses were thus bought by said defendants for the purpose of re-selling them for a profit. That one of said houses was by said defendants sold to one Lawrence Linn to be by said defendants moved from its location heretofore described onto a lot owned by said Lawrence Linn and located in Waukee, Iowa.

"That in the purchase, sale and delivery of these houses to their respective purchasers, and particularly in the purchase, sale and delivery of the house sold and delivered to Lawrence Linn, the defendants, Kenneth Dallam, Merle Dallam and Howard Dallam, d. b. a. H. Dallam and Sons, were engaged in operations separate, distinct and not connected with that named in the declarations and the contract heretofore set out.

"That on or about the 3rd day of July, 1942, said defendants were engaged in the moving of the above described house to the lot owned by said Lawrence Linn. That while so engaged the defendant, Lawrence Lentz, was assisting in the moving of said house and was severely injured when he came into contact with high voltage wires."

Plaintiff further alleged that the injuries to Lawrence Lentz so described were not covered by the policy.

The defendants in their answers admitted that said Lawrence Lentz received the severe injuries for which he claims compensation under the policy, by coming in contact with high voltage wires while he was assisting his employer in moving the house described in the complaint to the lot in Waukee, but they allege that the operation of moving the house was fairly incidental to the prosecution of the business of the defendants and appurtenant thereto and part of the business carried on by defendants, and that the policy fully covers the compensation liability to Lentz.

On the trial to the court without jury, decision was rendered on the above issues in favor of defendants.

The court said:

"That Lawrence Lentz, the employee of Kenneth Dallam, Merle Dallam and Howard Dallam, d. b. a. H. Dallam and Sons, was injured on or about July 3, 1942, and was, at the time of his injury, working for the insured, Kenneth Dallam, Merle Dallam and Howard Dallam, d. b. a. H. Dallam and Sons, within his regular duties and employment, and his injury arose out of and in the course of his employment; that such duties and employment were part of the grain elevator operation within the coverage of the insurance policy issued by the plaintiff called Standard Workmen's Compensation and Employer's Liability Policy, dated November 12, 1941; that plaintiff, as insurer, is liable to the employee, Lawrence Lentz.

"That a fair construction of the contract of insurance considering the situation and conditions surrounding the parties at the time of the issuance of the policy requires a construction of the contract to include the activities of the employee of the partnership in which he was engaged at the time of his injury; and plaintiff's policy covers and extends to and fully protects the insured therein named against any and all liability of the insured to the employee Lawrence Lentz arising out of his injury."

It appears that when the policy was solicited and applied for, it was the mutual intention of the parties to provide indemnity against the risk incurred by the defendants in respect to injuries to workmen they employed in the conduct of their business at Waukee, and that the designation of their business contained in the policy was intended to be descriptive of the probable operations to be fairly anticipated in the future conduct of that business during the life of the policy. It prescribed no term of duration or fixed premium but provided for audits to be made by the company upon which premiums were to be computed according to the number of employees and other changeable elements of the business.

■ The trial court found that the description of the policy was ambiguous in that it is not specific as to what the operations indemnified against then consisted of. The policy itself recognized such lack of specification in its provision, "If any operations as above defined are undertaken by this employer but are not described or rated in such declaration, this employer agrees to pay the premium thereon, at the time of the final adjustment of the premium". The court accordingly properly received testimony as to what the partnership was doing in its business at Waukee before, at the time of, and after the issuance of the policy.

There was evidence to show that the partnership owned and operated a grain elevator in Waukee, a village of some four hundred inhabitants a few miles west of Des Moines, and as a part of the structures there was a grain elevator, a silo annex, a crib and a coal shed, and they owned three trucks. They bought, sold and stored grain, dealt in seed, feed and coal, and did a general trucking business, including some heavy hauling. The three Dallams, and Lentz, their only hired help, who was a handy man doing whatever he was called on to do, performed all the labor.

Although "Grain Elevator Operations" afforded a very general designation, it is apparent that the business of the Dallams was not specialized in the little village community of Waukee as is more customary with established enterprises in large centers, but that as the owners of the described facilities and equipment they used them for the purposes to which they were adapted and for which they were intended as opportunity for so using them profitably arose in the community, consistently with and along with their work at the grain elevator location. The nature of their facilities and equipment and the occasion for their use in the village community, as well as the work they did, limited and helped to define their business as the evidence disclosed it. The entire business belonged to the partnership, there being but one set of books and bank account, and all transactions were carried on in the partnership name.

In April or May, 1942, they bought nine coal miner's houses located at a mine outside of Waukee, from the Shuler Coal Company, and having sold one of them to a man named Linn in Waukee, the accident and injury to Lentz occurred while two of the Dallams and Lentz were engaged in moving the house into the village with their trucks.

As indicated in its pleading, the insurance company's theory is that the purchase, sale and moving of the miner's houses constituted a new enterprise in the nature of a real estate business or a house-moving business, entered into by the Dallams after the policy was issued, and that such business was distinct from and neither incident to nor appurtenant or connected with the operations in respect to which the policy was issued.

But the trial court was not required to draw such an inference from the testimony. It is possible that in the little community of Waukee both house-moving and real estate businesses existed as regular businesses, but merely getting the nine miner's houses on the mine property to move into the village, and selling and moving them, would not, in ordinary understanding, constitute a business within either description. There was nothing to indicate that the work the Dallams and their hired man intended to do or did with their trucks in the house transaction disrupted any necessary operations at the elevator. The men carried on and the same business continued altogether in the usual course, and the fact that it was a miner's house being hauled by the trucks instead of some other heavy object carriers no persuasion that the Dallams were at the time in any different business from that for which they took out the insurance.

■ The court's finding that the transaction in which the accident occurred was connected with and incidental to and a part of the business designated in the policy, and was, therefore, covered by the policy, was sustained by substantial evidence and was not clearly erroneous.

A large part of the briefs and arguments is directed to the point, duly presented in the trial court, that the policy in question included coverage of all liability to its employee imposed upon the employer by the Iowa Workmen's Compensation laws. But the trial court determined the controversy upon its finding of the facts and its construction of the particular provisions of the policy applied to the facts, and we affirm the judgment on the grounds on which it was rendered. We express no opinion as to the effect of the provisions of the Iowa

Acts invoked on behalf of the insured to further extend the coverage of the policy. No controlling Iowa decisions have been cited on the point and we are not here required to anticipate.

Affirmed.